# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAJUAN DAVIS,

        Petitioner,                      Case Number: 2:06-CV-11281

v.                                           HON. GEORGE CARAM STEEH

BLAINE LAFLER,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Jajuan Davis is currently a state inmate incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan. He has filed a petition for a writ of habeas corpus challenging his first-degree murder conviction. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's conviction arises out of the beating death of seventy-two-year-old Azawi Arabo at his home in Oak Park, Michigan, on June 12, 2002.

On June 14, 2002, Police were summoned to Mr. Arabo's home by a 911 phone call from Mr. Arabo's son, Haytham Arabo. Haytham had not heard from his father in a couple of days and stopped by his father's home to check on him. His father did not answer the door and the blinds were all closed. Haytham became worried and summoned police.

Police Officer Frank Rehling testified that he responded to the 911 call at approximately 10:00 a.m. on June 14, 2002. Officer Rehling entered the home through a window. He found several large plastic bags fastened together, with what appeared to be a body inside. The bags

were opened when the medical examiner's personnel arrived. Mr. Arabo's body was found inside the bag. Also found inside the home were a hammer, blood-stained rubber gloves, and a box for the rubber gloves. A fingerprint on the glove box was identified at trial as belonging to Petitioner.

Dr. Ljuvisa Dragovic, the Chief Medical Examiner for Oakland County, performed an autopsy on the victim. Dr. Dragovic testified that Mr. Arabo suffered at least nine blows to the head which had been caused by the same object. The injuries were consistent with having been caused by a hammer.

Petitioner was interviewed by police on June 17, 2002. After initially denying any involvement in the crime, Petitioner admitted that he had entered Mr. Arabo's house to steal something and that Mr. Arabo then came home and asked him what he was doing. Petitioner admitted hitting Mr. Arabo with a hammer. He stated that he fled the house, but later returned to clean up. He placed Mr. Arabo's body in a garbage bag and stayed at the house for a few days because he did not know what to do with the body. Petitioner admitted taking money from Mr. Arabo's house.

Petitioner testified in his own defense at trial. He testified that he met Mr. Arabo while doing some yard work for Mr. Arabo's neighbor. On June 12, 2002, he broke into Mr. Arabo's house to steal some money. Mr. Arabo arrived home while Petitioner was still in the home. Petitioner testified that he tried to run out the front door, but Mr. Arabo grabbed him. Petitioner tried to break loose, but could not. Petitioner admitted to then picking up a hammer and striking Mr. Arabo with it. He claimed to have hit Mr. Arabo only so that he could get away. After striking Mr. Arabo three times with the hammer, he fled. At the time he left, Mr. Arabo was still

breathing. He returned later in the day and found that Mr. Arabo was not moving. He took $100 from Mr. Arabo's coat pocket and went to purchase cleaning items so that he could clean up the blood. He placed Mr. Arabo's body in some bags. He testified that he stayed at Mr. Arabo's home because he had nowhere else to stay and only left when police came to the house.

## II. Procedural History

Following a jury trial in Oakland County Circuit Court, Petitioner was convicted of first-degree felony murder. He was sentenced to life imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I. The trial court reversibly erred in denying the defense pre-trial motion to suppress the statement(s) the Defendant allegedly made to the police.
>
> II. The Defendant was unlawfully denied the effective assistance of trial counsel when trial counsel failed and/or refused to object to the lack of a proper foundation to admit the DNA evidence.
>
> III. The trial court abused its discretion and reversibly erred in allowing into evidence statement(s) the Defendant allegedly made to a jail guard that he hates white people and the person he killed was white.

The Michigan Court of Appeals affirmed Petitioner's conviction. People v. Davis, No. 248546 (Mich. Ct. App. Aug. 10, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Davis, No. 127108 (Mich. March 29, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises the same claims raised in state court.

## III. Analysis

## A. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1); see also Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11.

### B. Petitioner's Custodial Statement

First, Petitioner argues that his custodial statement was improperly admitted at trial because it was involuntary. Petitioner claims that he gave the statement only after he was promised leniency by the police if he gave a confession. The police, he claims, also told him that if he did not confess "it would make [him] look like an animal." Tr., 11/4/02, p. 51. He also argues that the statement was not voluntary because he was only seventeen-years old, did not have a parent or guardian present, was relatively uneducated, and had limited contact with police.

A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police

5

activity in question." McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988), *cert. denied*, 490 U.S. 1020 (1989). When determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Miller, 474 U.S. at 112. All of the factors surrounding the confession should be scrutinized closely. Culombe v. Connecticut, 367 U.S. 568 (1981). However, without coercive police activity, a confession should not be found to be involuntary. Colorado v. Connelly, 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").

The trial court conducted an evidentiary hearing pursuant to People v. Walker, 374 Mich. 331 (1965),[1] to determine the voluntariness of Petitioner's statement to police.

Following the evidentiary hearing, the trial court concluded that Petitioner's statement was voluntary and therefore admissible. On appeal, the Michigan Court of Appeals affirmed the trial court's holding:

> Defendant first asserts that the trial court erred by denying his motion to suppress a written statement that he gave to the police in which he admitted to having killed Arabo while burglarizing the house, contending that the statement was not given voluntarily. We disagree. When reviewing a trial court's determination that inculpatory statements were made voluntarily, this Court reviews the entire record de novo. People v. Daoud, 462 Mich 621, 629-630; 614 NW2d 152 (2002). However, this Court reviews the trial court's factual findings for clear error and, thus, will not disturb them absent a definite and firm conviction that a mistake was made. People v Shipley, 256 Mich App 367, 372-373; 662 NW2d 856 (2003).
>
> Defendant asserts that he did not make the challenged statement voluntarily

---

[1] People v. Walker, 374 Mich. 331 (1965) requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

because the interviewing officer promised him leniency and told him that he would not look "like an animal" if he confessed. However, the officer denied having made any promise of leniency to defendant either before or after the interview. The trial court evidently believed the officer to be more credible, and chose not to believe defendant's assertions that the officer had promised leniency or stated that defendant's confessing would make him seem less "like an animal" in the eyes of the jury, and this Court will defer to a trial court's assessment of the credibility of a witness. Shipley, *supra* at 373.

This Court examines the conduct of the police to determine whether a statement was voluntary. Id. In People v. Sexton (After Remand), 461 Mich. 746, 752-753; 609 N.W.2d 822 (2000), our Supreme Court stated that the totality of the circumstances surrounding the statement must be reviewed in order to determine whether it was voluntarily given, and set forth the following factors to be considered:

> "[T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.
>
> "The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." (Quoting People v Cipriano, 431 Mich. 315, 334; 429 NW2d 781 (1988) (citations omitted).)

In the present case, defendant was advised of his Miranda (Miranda v Arizona, 384 U.S. 436; 86 S. Ct. 1602; 16 L. Ed. 2d 694 (1966)) rights and signed a form stating that he understood his rights, was willing to waive them, and that no promises or threats had been made to him. Defendant also testified that he understood his rights when the detectives read them to him, and that he was not threatened in any way. Moreover, defendant stipulated that he had previous experience with the police, and the trial court confirmed that he had previous experience with his rights because they had been read to him during his previous court experience. Furthermore, the officer testified that defendant was not under

> arrest when he made the statement, appeared to comprehend what was being said to him, did not appear to be deprived of sleep or nourishment, and did not appear to be malnourished, suffering from any mental deficiencies, or under the influence of drugs or alcohol.
>
> Defendant, however, asserts that his confession was not voluntary under the totality of the circumstances because he was seventeen years old at the time of the interview, was not accompanied by a parent or guardian, and only had a tenth grade education. However, a seventeen-year-old is treated as an adult for the purposes of criminal procedure. MCL 764.27; People v Perkins, 107 Mich. App. 440, 444; 309 N.W.2d 634 (1981). Therefore, the additional factors that are taken into account when reviewing the totality of the circumstances to determine whether a juvenile's confession is admissible, such as whether the police complied with the juvenile court rules and whether a parent or custodian were present, are not applicable in the present case. See In re SLL, 246 Mich. App. 204, 209; 631 N.W.2d 775 (2001). Moreover, in the present case, given defendant's previous experiences with the police and court system, the fact that he was living on his own at the time of the interview, and appeared to the officer to comprehend what was being said to him, defendant's only having a tenth grade education does not lead to an inference that his statement was not voluntary.
>
> Based on review de novo, we find that the trial court committed no error requiring reversal when it denied defendant's motion to suppress.

People v. Davis, slip op. at 1-3.

"Although a promise of leniency is relevant to determining whether a confession was involuntary and, depending on the totality of the circumstances, may render a confession coerced, a statement about possible leniency upon cooperation is not generally impermissible." U.S. v. Cruse, 59 Fed. App'x 72, 78 (6th Cir. 2003) (internal quotations omitted). Speculation that cooperation will have a positive effect does not render a confession involuntary. U.S. v. Wiley, 132 Fed. App'x 635, 640 (6th Cir. 2005).

This Court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. Bailey v. Mitchell, 271 F.3d 652, 656 (6th Cir.2001); 28 U.S.C. § 2254(e)(1). "[S]ubsidiary factual

8

questions, such as whether . . . in fact the police engaged in the intimidation tactics alleged by the defendant, . . . are entitled to the § 2254(d) presumption [of correctness]." Miller v. Fenton, 474 U.S. 104, 112 (1985). By ruling that petitioner's confession was voluntary, the trial court and the Michigan Court of Appeals both found that no promises of leniency had been made to induce petitioner's confession. Petitioner has failed to present "clear and convincing evidence" to rebut the state court's finding that no promises of leniency were made to Petitioner. 28 U.S.C. § 2254(e)(1); McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004). Therefore, he has not shown that his confession was involuntary because it was induced by illusory promises of leniency.

The state court also concluded that Petitioner's age, his tenth-grade education, and the absence of a parent during the interrogation did not render his conviction involuntary. Based upon the totality of the circumstances in this case, it was objectively reasonable for the Michigan Court of Appeals to hold that Petitioner's confession was voluntary. As the court of appeals noted, Petitioner signed a Miranda waiver form and testified that he understood his rights when they were read to him, the detective testified that Petitioner did not appear to be deprived of sleep or nourishment, and appeared to understand what was being said to him. Together, these circumstances support a finding that Petitioner's statement was voluntary.

### C. Ineffective Assistance of Counsel

In his second claim, Petitioner argues that his trial attorney was ineffective for failing to object to the introduction of expert testimony regarding DNA testing on a hammer and gloves found at the crime scene on the ground that an appropriate foundation was not laid. The DNA expert testified that material found on the hammer and gloves matched the DNA profile for both

9

Petitioner and the victim.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399 F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The Michigan Court of Appeals held that Petitioner could not establish that his attorney was ineffective in failing to object to the admission of this testimony because Petitioner clearly was not prejudiced by its admission. The court of appeals stated, in pertinent part:

> First, during trial, defendant did not deny that he had killed Arabo with a hammer. Second, during trial, defendant was shown the hammer that was found at Arabo's house, and acknowledged that it was the hammer he had used to kill Arabo. Moreover, a video tape was introduced at trial that showed defendant purchasing gloves that he admitted wearing when he tried to clean up the crime scene, as well as a receipt for their purchase, and defendant admitted in his written confession and at trial that he had purchases the gloves and other items. Furthermore, a crime lab specialist from the Oakland County Sheriff's Department testified that defendant's fingerprints were found on the packaging for the gloves, which was found in Arabo's home, as well as the duct tape the defendant had purchased, Arabo's telephone, and other items in Arabo's home. For the above reasons, defendant has not shown the required prejudice to prevail on an ineffective

10

assistance of counsel claim.

Davis, slip op. at 3.

The state court, although not specifically citing Strickland, clearly applied the standard articulated therein. Given that the evidence against Petitioner was so strong, even absent the DNA expert's testimony, Petitioner fails to show how he was prejudiced by his attorney's failure to challenge the admissibility of that testimony. Thus, the Court concludes that the state court's finding that counsel was not ineffective in failing to object to this testimony was not contrary to or an unreasonable application of Strickland.

### D. Admissibility of Petitioner's Statement to Prison Guard

Finally, Petitioner seeks habeas relief on his claim that the trial court improperly admitted testimony from a prison guard, Jeremy Quinn. Prior to trial, the Court conducted a hearing to determine the admissibility of Quinn's testimony. At the hearing, Quinn testified that Petitioner told him that Petitioner hates white people, that the person he killed was white, and that, given another chance, he would kill another white person. The trial court judge ruled that Quinn could testify that Petitioner stated he hates white people and had killed a white person, but that his statement that he would kill another white person if given the chance was inadmissible.

The Michigan Court of Appeals held that the evidence was properly admitted because it was relevant to whether Petitioner killed Arabo and whether he had the requisite state of mind.

"'[F]ederal habeas corpus review does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991), *quoting* Louis v. Jeffers, 497 U.S. 764, 780 (1990). "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994), *citing* Fuson

v. Jago, 773 F.2d 55, 59 (6th Cir. 1985). Therefore, to the extent that Petitioner alleges the admission of other acts testimony violated state law, habeas relief is unavailable.

Petitioner also alleges that the admission of this evidence violated his right to a fair trial. "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). The "category of infractions" that violate fundamental fairness have been defined "very narrowly." Id. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Id. (internal quotation omitted).

The Court finds that this testimony was relevant and its admission did not deprive Petitioner of his right to a fair trial.

### IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**Dated: February 5, 2008**

    **S/George Caram Steeh**
    **GEORGE CARAM STEEH**
    **UNITED STATES DISTRICT JUDGE**

**CERTIFICATE OF SERVICE**

**Copies of this Order were served upon attorneys of record on February 5, 2008, by electronic and/or ordinary mail.**

**S/Josephine Chaffee**
**Deputy Clerk**